UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RENEFORD DALE BAKER,** | ) |
| | ) No. 13 CV 311 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,**[1] | ) |
| | ) February 18, 2015 |
| Defendant. | ) |

# MEMORANDUM OPINION and ORDER

Reneford Baker seeks disability insurance benefits ("DIB"), see 42 U.S.C. §§ 416(i), 423, claiming that he is disabled as a result of physical and mental impairments including meningeal tuberculosis ("TB"), seizures, migraines, degenerative disc disease, post-traumatic stress disorder ("PTSD"), and cognitive disorder. After the Commissioner of the Social Security Administration denied his application, Baker filed this suit seeking judicial review. See 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, the Commissioner's motion is granted and Baker's motion is denied:

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin—who became the Acting Commissioner of Social Security on February 14, 2013—is automatically substituted as the named defendant.

**Procedural History**

Baker applied for DIB on August 13, 2009, claiming he was disabled as of December 14, 2008, because of PTSD, TB, seizures, and migraines. (Administrative Record ("A.R.") 66.) After the Commissioner denied his claim initially and upon reconsideration, (id. at 66, 69), Baker sought and was granted a hearing before an administrative law judge ("ALJ"), (id. at 81-84). A hearing was held on April 7, 2011, at which Baker and a vocational expert provided testimony. (Id. at 38-65.) The ALJ issued a decision on June 14, 2011, finding that Baker is not disabled within the meaning of the Social Security Act and denying his DIB claim. (Id. at 18-37.) When the Appeals Council denied Baker's request for review, (id. at 1-7), the ALJ's denial of benefits became the final decision of the Commissioner, *see O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). On January 15, 2013, Baker filed the current suit seeking judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g); (R. 1, Compl.). The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c); (R. 8).

**Facts**

Baker, now 48 years old, is an Army veteran who served as an ammunition specialist in Iraq for seven months in 2003. (A.R. 1215.) After returning from Iraq, he worked as an Army ammunition inspector for a year, then worked in appliance repair for about a year after completing vocational training. (Id. at 224, 1217.) Baker stopped working in December 2008 after suffering from a seizure and has not

worked since. (Id. at 1217.) He presented both documentary and testimonial evidence in support of his claim.

## A.  Medical Evidence

In November 2007, Baker sought mental health treatment from Dr. Michael Marti, a Veterans Administration ("VA") psychiatrist who diagnosed him with PTSD. (A.R. 369-70.) Dr. Marti saw Baker about once a week through January 2008 and noted that Baker suffered from nightmares and feelings of guilt from a traumatic incident he experienced in Iraq. (Id. at 365-70.) Dr. Marti's notes indicate that Baker was doing well in therapy and that his nightmares were becoming less frequent. (Id. at 364.) Baker continued to see Dr. Marti sporadically for PTSD treatment from May 2008 through September 2009. (See, e.g., id. at 295, 337-40, 427, 727.)

Baker also received treatment from VA physicians for back pain and migraines. (Id. at 283-86, 289-94.) In March 2008, Dr. Judith Ingram examined Baker and noted that imaging showed L5/S1 degenerative disc disease and lumbosacral instability. (Id. at 283-84.) Baker reported that though he had suffered from low back pain since 2001, his pain had worsened with flare-ups occurring twice a week and lasting an hour. (Id. at 446.) He received an epidural which he said resolved the pain temporarily, and he also takes hydrocodone, Naproxen, and Flexeril for pain relief. (Id.) Dr. Ingram noted that Baker's degenerative disc disease has severe effects on his ability to do chores and exercise, moderate effects on recreation and travel, and mild effects on dressing and

grooming. (Id. at 457.) She also noted that Baker has suffered from migraines since 2001, but that they are effectively controlled with Imitrex. (Id. at 291.)

Then in December 2008, Baker had a seizure and was admitted to the emergency room. A CT scan and MRI showed swelling and brain lesions, and shortly thereafter Baker underwent surgery to remove a mass from his brain. (Id. at 243, 516.) He was diagnosed with TB and began receiving treatment from Dr. Said Elshihabi, a neurosurgeon. (See id. at 516.) In January 2009 Dr. Elshihabi noted that Baker reported "doing well" and feeling "good," and had not had any seizures since starting anti-epileptic medications. (Id. at 859.) Although a post-surgery CT scan showed additional brain lesions, Dr. Elshihabi wrote that they were small and had not changed in size. (Id. at 574-75, 859.) Baker still complained of migraines and low back pain, but said he was doing much better after his surgery. (Id. at 329.)

From February 2009 through August 2009, Baker continued to receive treatment from various providers and generally reported "doing well." (See, e.g., id. at 599, 688, 919.) But in August 2009 Baker suffered from a second seizure after running out of anti-epileptic medication. (Id. at 727, 851.) An October 2009 MRI showed the presence of multiple brain lesions, (id. at 1135), and Baker had yet another seizure in December 2009, (id. at 1102). An MRI performed in March 2010 showed overall improvement in Baker's TB since the previous MRI, but some residual infection still remained and he was ultimately diagnosed with sarcoidosis.

4

(Id. at 876, 1078.) During this time Baker reported having "good days and bad," with occasional anxiety attacks and intermittent mild back pain. (Id. at 867.)

In October 2009 and April 2010, state agency consultants completed physical residual functional capacity ("RFC") assessments and psychiatric review techniques. The consulting physicians concluded that although Baker's allegations regarding his physical impairments were supported by objective findings, he should still be able to work with certain exertional, postural, manipulative, and environmental limitations. (Id. at 677, 887.) Similarly, the consulting psychiatrists concluded that Baker suffered from only moderate and mild mental difficulties and should be able to perform work involving simple instructions, a well-spaced work environment, casual contact with the public, non-confrontational criticism, and gradual changes in work settings. (Id. at 668, 682, 898, 904.)

After Baker completed his 18-month TB medication course in June 2010, he began taking prednisone for sarcoidosis. (Id. at 1099.) He reported feeling "good," and an MRI showed "resolution of prior seen lesions." (Id. at 1117.) Dr. Elshihabi cleared Baker to return to work with certain restrictions "if cleared by neurology from [a] seizure standpoint." (Id.) Baker continued to receive intermittent mental and physical health care at VA medical centers through March 2011, including PTSD and cognitive disorder therapy sessions. (See, e.g., id. at 1076, 1185, 1215, 1233, 1293.) During that time his migraines were successfully managed with

5

medication, but he had another seizure in January 2011 and continued to complain of trouble with memory, concentration, and verbal communication. (Id. at 1215.)[2]

**B.  Baker's Testimony**

At the April 2011 hearing, Baker testified that he served in the military from 1997 through 2005. (A.R. 49.) He obtained a technical degree in appliances in 2006 and 2007, but stopped working in 2008 after he suffered his first seizure. (Id. at 45-46.) He also described his daily activities, explaining that he has one and two year-old sons at home whom he takes care of when he is able to do so. (Id. at 47.) Baker said that most of the time his wife's mother or brother comes over to watch the children. (Id.) He testified that he and his wife both do household chores and that he drives once or twice a week. (Id. at 32, 34.) Baker also said he does lawn care, takes his sons to the park, enjoys grilling, and has no problems lifting. (Id. at 52-53.)

As for his symptoms, Baker testified that he has suffered from severe headaches since 2003 and that stress from being unable to work has aggravated his symptoms. (Id. at 52-55.) He uses Imitrex to treat his migraines and also takes sleeping pills that sometimes incapacitate him for eight to twelve hours a day. (Id. at 54.) He said that he has nightmares at least two or three times a week and receives counseling for PTSD. (Id. at 54-55, 57.) He testified that he takes anti-

---

[2] The record also includes reports from Drs. Thomas Zabiega and Barbara Benton, which Baker submitted after the ALJ's decision and which the Appeals Council included in its list of exhibits. (Id. at 5, 1450.) But since Baker does not cite to these reports in his brief, let alone argue that the records are new and material, the court will not consider them here. *See* 42 U.S.C. § 405(g); *Eads v. Sec'y of the Dept. of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

6

seizure medication, which makes him tired and nauseated at times, and that he also takes hydrocodone to treat his back pain. (Id. at 55-56.)

**C.      Vocational Expert's Testimony**

Vocational Expert ("VE") John Grenfell testified regarding the kinds of jobs someone with hypothetical limitations could perform. (A.R. 58-64.) The VE first confirmed that Baker previously worked as an ammunition handler (which the VE explained is comparable to a "material handler") and as an electrical helper. (Id. at 59.) The VE testified that Baker performed these jobs at medium and heavy exertion levels. (Id.) The ALJ then asked the VE about a hypothetical person limited to light work involving occasional overhead reaching and other postural limitations, avoidance of extreme temperatures and other hazards, and only simple, repetitive, and routine tasks. (Id. at 60.) The VE responded that such an individual would not be able to perform any of Baker's past work, but would be able to work as an office helper, sales attendant, or production assembler. (Id. at 60-61.) The ALJ then asked about that same individual, except this time with work reduced to a sedentary level. (Id. at 61.) The VE testified that such a person could work as a semiconductor bonder, surveillance system monitor, or an order clerk. (Id.) The ALJ further limited the hypothetical individual to a low-stress work environment, which she defined as including occasional decision-making, occasional changes in work settings, and no strict production quotas. (Id. at 62.) The VE said that such an individual could still work as an order clerk. (Id.) He explained that the job of machine operator would also be available at the light level, and that the position of

7

charge account clerk would be available at the sedentary level. (Id.) Finally, the ALJ asked about an individual who is further limited to only occasional contact with the general public and occasional interactions with supervisors and coworkers. (Id.) The VE said that such a person could still work as a copy machine operator or order clerk. (Id. at 62-63.)

Baker's attorney then asked the VE whether someone who would be less than 70 percent productive, either by missing work days or taking work breaks, could perform any of the jobs previously cited. (Id. at 63.) The VE responded that such a person would be unable to work in those positions. (Id. at 64.)

D. **The ALJ's Decision**

The ALJ concluded that Baker is not disabled under §§ 216(i) and 223(d) of the Social Security Act. (A.R. 21.) Applying the standard five-step sequence for assessing disability, *see Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012), the ALJ determined at steps one and two of the analysis that Baker has not engaged in substantial gainful activity since December 14, 2008, and that his migraine headaches, seizures, PTSD, degenerative disc disease, and cognitive disorder constitute severe impairments. (A.R. 23.) At step three, after using the special technique for analyzing mental impairments, the ALJ found that Baker's impairments neither meet nor medically equal any of the listings in 20 C.F.R. 404, Subpart P, Appendix 1. (Id. at 23-25.) Proceeding to steps four and five of the analysis, the ALJ concluded that Baker has the RFC to perform light work involving simple, repetitive, and routine work tasks with certain postural,

8

manipulative, and environmental limitations. (Id. at 20.) The ALJ then determined that although Baker is unable to return to his previous work, he could still perform other jobs which exist in the regional economy. (Id. at 30.) Accordingly, the ALJ concluded that Baker is not disabled and denied his applications for benefits.

## Analysis

Baker argues that the ALJ made reversible errors at step three of the required analysis and in determining his mental RFC. The court notes that although Baker raises other arguments in his brief, those contentions are unfocused or undeveloped. For example, Baker makes only passing references to Listing 11.03 and the ALJ's step-two and credibility analyses without providing any substantive support for his assertions. (See, e.g., R. 13, Pl.'s Mem. at 3, 9, 15.) Because such challenges are not adequately developed, they are deemed waived. *See Schomas v. Colvin*, 732 F.3d 702, 703 (7th Cir. 2013); *United States v. Thornton*, 642 F.3d 599, 606 (7th Cir. 2011) ("Undeveloped and unsupported arguments may be deemed waived.").

This court's role is limited to determining whether the ALJ's decision is supported by substantial evidence and free of legal error. *See Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard requires the ALJ to build a logical

bridge between the evidence and her conclusion, but not necessarily to provide a comprehensive written evaluation of every piece of evidence in the record. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). In asking whether the ALJ's decision has adequate support, this court will not reweigh the evidence or substitute its own judgment for the ALJ's. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## A. Step-Three Analysis

The court first addresses Baker's contention that the ALJ should have found him disabled at step three pursuant to Listings 12.02 (Organic Mental Disorders) and 12.06 (Anxiety Related Disorders). For the mental disorders covered by these listings, the ALJ uses a "special technique" of rating the claimant's degree of functional limitation in four areas, which are also referred to as the "B criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(a),(c)(3); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). A claimant satisfies the requirements of Listings 12.02 or 12.06 if he has two marked ratings in any of the first three B criteria, or one marked rating with repeated episodes of decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.06.

In this case, the ALJ determined that Baker has only mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration, and thus concluded that he does not have

sufficient degrees of limitation to meet or medically equal the severity of any of the mental disorders in the listings. (A.R. 24.) Baker argues that the ALJ's analysis was subjective and ignored evidence of his functional limitations. (See R. 13, Pl.'s Mem. at 11.) But contrary to Baker's assertion, the ALJ did use evidence from the record to explain her conclusions regarding each of the B criteria. She began by noting that although Baker reported spending substantial portions of the day sleeping, he also reported performing household chores, taking care of the lawn, and going to the grocery store. (A.R. 24.) As for social functioning, the ALJ discussed the fact that Baker lives with his wife and young children and receives occasional visits from family. (Id.) She also pointed out that Baker denied having problems getting along with family, friends, or neighbors. (See id. at 24 (citing id. at 177).) The ALJ next noted that Baker reported difficulty with paying attention and following written instructions, but that he also denied difficulty with following written instructions and exhibited sufficient attention and concentration to meet the demands of an evaluative interview. (Id. at 24.) Finally, the ALJ concluded that there was no evidence indicating that Baker had suffered any episodes of decompensation. (Id.)

Given the ALJ's reasoned consideration of the B criteria, this court finds that the ALJ's step-three analysis builds a sufficient logical bridge between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Far from providing a merely perfunctory, poorly articulated analysis, *Kastner*, 697 F.3d at 647, here the ALJ addressed each B criteria category and made references to the

record in support of her findings. Although Baker insists that there was other evidence the ALJ did not mention, the ALJ need not explicitly address every piece of evidence in determining whether a claimant's condition meets or equals a listed impairment. *See Pepper*, 712 F.3d at 362. Moreover, even though the ALJ did not explicitly address Listing 12.02 by name, her error was harmless because the B criteria she analyzed under Listing 12.06 are the same for Listing 12.02. Since the ALJ adequately discussed the B criteria, the fact that she did not explicitly refer to Listing 12.02 does not require remand. *See Mosteller v. Colvin*, No. 11 CV 1640, 2014 WL 4403373, at *10 (N.D. Ill. Aug. 28, 2014) (noting that ALJ does not err if she fails to identify a listing by name so long as her discussion of the evidence is not perfunctory (citing *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006))).

Baker also contends that he meets the "paragraph C" requirements, an alternative basis for finding that his condition meets or equals a listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Paragraph C of Listings 12.02 and 12.06 require Baker to show that he cannot live outside his home, or that he has a documented organic mental disorder lasting at least two years which is also characterized by repeated episodes of decompensation, circumstances which could easily lead to decompensation, or an inability to function outside a highly supportive living arrangement. *See* id. §§ 12.02(C), 12.06(C). While Baker may be able to show that he has a documented chronic organic mental disorder, he nonetheless fails to demonstrate that he meets the other paragraph C requirements. And as the ALJ noted in her decision, the record indicates that

Baker is capable of "sufficient adaptability to maintain daily activities" and is able to function outside of his home. (A.R. 25.) Accordingly, there are no grounds for remand in the ALJ's step-three analysis.

**B.    Mental RFC Assessment**

Baker also challenges the ALJ's RFC assessment, arguing that limiting him to simple, repetitive, and routine work tasks does not adequately take into account the full extent of Baker's mental limitations. (R. 13, Pl.'s Mem. at 10, 17-18.) More specifically, Baker contends that the ALJ ignored evidence from state agency consultants who recommended that Baker work in a well-spaced environment with no more than casual contact with the public, only non-confrontational criticism, and gradual changes in work settings. (See A.R. 668, 682, 898, 904.) It does appear that while the ALJ cited the agency consultants' opinions and said she gave them "great weight," some limitations the consultants recommended are not reflected in the ALJ's RFC assessment and it is unclear why they were omitted. (See id. at 29.)

Even so, because this court is convinced that the ALJ would still find that Baker is not entitled to benefits if this case were remanded, the ALJ's error in omitting those restrictions from the RFC is harmless here. *See McKinzey*, 641 F.3d at 892 ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."). During the administrative hearing, the ALJ asked the VE about a hypothetical individual who had to work with limitations consistent with those recommended by the state agency consultants—work in a low-stress work environment characterized by only

13

occasional decision-making, occasional changes in the work setting, and no strict-production quotas, and requiring only occasional contact and interactions with the general public, supervisors, and coworkers. (Id. at 62.) In response to the ALJ's hypothetical, the VE responded that such a person could still work as a copy machine operator or order clerk. (Id. at 62-63.) Given this testimony, the court finds that even if the ALJ had adopted the RFC limitations in the state agency consultants' reports, the ALJ would still find that Baker is not disabled because jobs exist in the regional economy for someone with those limitations. While the ALJ did not explicitly include a "well-spaced work environment" or non-confrontational criticism in her hypothetical, such limitations are adequately captured by the other restrictions she did include. Accordingly, the ALJ's omission is harmless. *See Scott v. Astrue*, 730 F. Supp. 2d 918, 935 (C.D. Ill. 2010) ("Harmless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits.").

## Conclusion

For the foregoing reasons, Baker's motion for summary judgment is denied, the Commissioner's cross-motion for summary judgment is granted, and the Commissioner's decision is affirmed.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge